UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
**PREMIUM SPORTS INC.,**

                    Plaintiff,                  **COMPLAINT**

    -against-                        Civil Action No.

DADDO BOGICH, Individually, and as officer, director,
shareholder, principal, manager and/or member of K &
M CAFE LLC, d/b/a ROEBLING SPORTING CLUB,

and

K & M CAFE LLC, d/b/a ROEBLING SPORTING
CLUB,

                    Defendants.
-------------------------------------------------------------------

       Plaintiff, **PREMIUM SPORTS INC.,** (hereinafter "Plaintiff"), by their attorneys, LONSTEIN LAW OFFICE P.C., complaining of the Defendants herein respectfully sets forth and alleges, as follows:

<u>**JURISDICTION AND VENUE**</u>

       1.  This is a civil action seeking damages for violations of 47 U.S.C. §§ 553 or 605, et seq. and for copyright infringement under the copyright laws of the U.S. (17 U.S.C. §101, et seq.).

       2.  This Court has jurisdiction under 17 U.S.C. §101, et seq. and 28 U.S.C. Section §1331, which states that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and 28 U.S.C. Section §1338(a) (copyright).

-1-

3.   Upon information and belief, venue is proper in this court because, inter alia, a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of New York (28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 112(c)).

4. This Court has personal jurisdiction over the parties in this action.  Defendants to this action had or have an agent or agents who has or have independently transacted business in the State of New York and certain activities of Defendants giving rise to this action took place in the State of New York; more particularly, Defendants= acts of violating federal laws and the proprietary rights of Plaintiff, as the exclusive rights owner to the distribution of the satellite programming transmission signals, took place within the State of New York.  Moreover, upon information and belief, Defendants have their principal place of business within the State of New York; thus, this Court has personal jurisdiction over Defendants.

**THE PARTIES**

5.   The Plaintiff is a California corporation with its principal place of business located at 170 Columbus Avenue, Suite 210, San Francisco, CA 94133.

6.   The Plaintiff is the holder of the exclusive right to the distribution of the 2018 6 Nations Rugby: England vs. Scotland February 24 match to commercial establishments in the United States.

7.   The Plaintiff is also the holder of the exclusive right to authorize and license the public exhibition of the 2018 6 Nations Rugby: England vs. Scotland February 24 match to commercial establishments in the United States.

8.   Upon information and belief the Defendant, DADDO BOGICH, resides at 2 Water Street, Apt. 15E, New York, New York 10004.

-2-

9.   Upon information and belief, ROEBLING SPORTING CLUB, is located and doing business at 225 N. 8th Street, Brooklyn, NY 11211 (the "Establishment").

10.   Upon information and belief, the Defendant, DADDO BOGICH, is an officer, director, shareholder, principal, manager and/or member of K & M CAFE LLC, d/b/a ROEBLING SPORTING CLUB.

11.   Upon information and belief, the Defendant, DADDO BOGICH, was the individual with supervisory capacity and control over the activities occurring within the Establishment on February 24, 2018.

12.   Upon information and belief, the Defendant, DADDO BOGICH, received a financial benefit from the operations of K & M CAFE LLC, d/b/a ROEBLING SPORTING CLUB on February 24, 2018.

13.   Upon information and belief, the Defendant, DADDO BOGICH, was the individual with close control over the internal operating procedures and employment practices of K & M CAFE LLC, d/b/a ROEBLING SPORTING CLUB on February 24, 2018.

14.   Upon information and belief, the Defendant, K & M CAFE LLC, is a limited liability company, formed and licensed to do business in the State of New York.

15.   Upon information and belief, the Defendants, jointly and severally,  on February 23, 2018, the day prior to the broadcast,  advertised their intention to show the match on social media, including but not limited to posting same to their Instagram account, *@rorblingnyc*, for the exhibition of Plaintiff's broadcast within the commercial establishment known as ROEBLING SPORTING CLUB.

16.   Upon information and belief, the Defendants, jointly and severally, on February 24,

-3-

2018, the day of the broadcast, advertised their intention to exhibit Plaintiff's broadcast within the commercial establishment known as ROEBLING SPORTING CLUB by placing signage on the sidewalk in front of the establishment advertising the matches to be shown.

## COUNT I

17.   Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs "1" through "16," inclusive, as though set forth herein at length.

18.   Plaintiff is the owner of the exclusive rights of distribution and public performance as to commercial establishments in the United States to the 2018 6 Nations Rugby: England vs. Scotland February 24 match scheduled for February 24, 2018, via closed circuit television and via encrypted satellite signal (hereinafter referred to as the "Broadcast").   The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal.

19.   Plaintiff, for a licensing fee, entered into licensing agreements with various entities in the State of New York, allowing them to publicly exhibit the Broadcast to their patrons.

20.   Upon information and belief, with full knowledge that the Broadcast was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agents, servants, workmen or employees, without paying Plaintiff a fee or entering into an agreement with Plaintiff, unlawfully intercepted, received and/or de-scrambled said satellite signal and did exhibit the Broadcast at the above address at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain.   Defendants also advertised for the Broadcast on Instagram, making their actions clearly willful.

21.   Upon information and belief, Defendants and/or their agents, servants, workmen

-4-

and/or employees intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's Broadcast, which originated via satellite uplink and then re-transmitted via satellite or microwave signal to various cable and satellite systems. There are multiple illegal and unauthorized methods of accessing the Broadcast, including but not limited to the traditional ways of pirating a broadcast (1) splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment; (2) commercially misusing cable or satellite by registering same as a residence when it is, in fact, a business; or (3) taking a lawfully obtained box or satellite receiver from a private residence, into a business. Recently emerging over-the-top "OTT" technologies, used for the delivery of film and TV content via the internet , such as (1) Broadband or internet broadcast; and/or (2) Live Social Media Streaming ("Nano-Piracy") are additional methods in which pirated material can be obtained  without requiring users to subscribe to a traditional cable or satellite pay-tv service like Comcast, DIRECTV or Time Warner Cable and  are readily available to anyone with a Smartphone.  The misuse of OTT technology can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world.  Each of the above described methods would allow Defendants to access the Broadcast unlawfully and without Plaintiffs authorization. Prior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendants obtained the Broadcast.  However, it is logical to conclude that Defendants utilized one of the above described methods or another to intercept and exhibit the Broadcast without entering into an agreement to obtain it lawfully from Plaintiff, the legal rights holder for commercial exhibition.

22.   47 U.S.C. §605 (a) prohibits the unauthorized reception and publication or use of communications such as the transmission for which Plaintiff had the distribution and public

-5-

performance rights thereto.

23.   By reason of the aforementioned conduct, the Defendants willfully violated 47 U.S.C. §605 (a).

24.   By reason of the Defendants' violation of 47 U.S.C. §605 (a), Plaintiff has a private right of action pursuant to 47 U.S.C. §605.

25.   As a result of the Defendants' willful violation of 47 U.S.C. §605 (a), Plaintiff is entitled to damages, in the discretion of this Court, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii) of up to the maximum amount of $110,000.00 as to each Defendant.

26.  Pursuant to 47 U.S.C. §605, Plaintiff is also entitled to an award of full costs, interest and reasonable attorney's fees.

**COUNT II**

27.  Plaintiff hereby incorporates paragraphs "1" through "16" and "18" through "21," inclusive, as though fully set forth herein.

28.   Upon information and belief, with full knowledge that the Broadcast was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agents, servants, workmen or employees did exhibit the Broadcast at the location of 225 N. 8th Street, Brooklyn, NY 11211, at the time of its transmission, willfully and for purposes of direct or indirect commercial advantage or private financial gain.

29.   47 U.S.C. §553 prohibits the unauthorized reception, interception and exhibition of any communications service offered over a cable system such as the transmission for which Plaintiff had the distribution rights thereto.

30.   Upon information and belief, the Defendants individually, willfully and illegally

-6-

intercepted said Broadcast when it was distributed and shown by cable television systems.

31.     By reason of the aforementioned conduct, all of the aforementioned Defendants willfully violated 47 U.S.C. §553, thereby giving rise to a private right of action.

32.   As a result of the aforementioned Defendants' violations of 47 U.S.C. §553, Plaintiff is entitled to damages, in an amount in the discretion of this Court, of up to the maximum amount of $60,000.00, plus the recovery of full costs, interest and reasonable attorney's fees.

## COUNT III

33.   Plaintiff hereby incorporates paragraphs "1" through "16" and "18" through "21" and 28," inclusive, as though fully set forth herein.

34.   Plaintiff is the owner of the exclusive rights of distribution and public performance as to commercial establishments in the United States to the 2018 6 Nations Rugby: England vs. Scotland February 24 match via closed circuit television and via encrypted satellite signal.  The application for certificate of copyright registration was filed with the U.S. Copyright on March 9, 2018 under Application Number 1-6364878721. The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal.

35.    Plaintiff has exclusive rights to the Broadcast, including the exclusive right of distribution of same and the exclusive right to publicly perform the Broadcast as to commercial establishments in the United States as well as authorize and/or license the public exhibition to commercial entities.

36.   Defendants never obtained the proper authority or license from Plaintiff to publicly exhibit the Broadcast on February 24, 2018.

37.   Upon information and belief, with full knowledge that the Broadcast can only be

-7-

exhibited within a commercial establishment by the purchasing of a license from Plaintiff, Defendants and/or their agents, servants, workmen or employees illegally intercepted the Broadcast and exhibited same in their commercial establishment on February 24, 2018.

38.    Specifically, upon information and belief, the Defendants and/or their agents, servants, workmen and employees unlawfully obtained the Broadcast, enabling Defendants to publicly exhibit the Broadcast without paying the appropriate licensing fee to Plaintiff.

39.    By reason of the aforementioned conduct, the Defendants willfully violated 17 U.S.C. §501(a).

40.    By reason of the aforementioned Defendants' violation of 17 U.S.C. §501(a), Plaintiff has a private right of action pursuant to 17 U.S.C. §501(b).

41.    As a result of Defendants' willful infringement of Plaintiff's exclusive distribution and public performance rights under copyright, Plaintiff is entitled to damages, in the discretion of this Court, under 17 U.S.C. §504(c)(1) and §504(c)(2), of up to the maximum amount of $150,000.00.

42.    Plaintiff is further entitled to its attorney's fees and costs pursuant to 17 U.S.C. §505.

WHEREFORE, the Plaintiff requests that judgment be entered in its favor and against each of the aforementioned Defendants, jointly and severally,  granting to Plaintiff the following:

(a) Declare that Defendants' unauthorized exhibition of the February 24, 2018 Broadcast violated the Federal Communications Act and the U.S. Copyright Act and that such violations were committed willfully and for purposes of Defendants' direct or indirect commercial advantage or for private financial gain, as Defendants advertised and subsequently displayed Plaintiff's Broadcast.

-8-

(b)  On the first cause of action, statutory penalties in an amount, in the discretion of this Court, of up to the maximum amount of $110,000.00 as to each Defendant for their willful violation of 47 U.S.C. §605 (a); or

(c)  On the second cause of action, statutory penalties in an amount, in the discretion of this Court, of up to the maximum amount of $60,000.00 as to each Defendant for their violation of 47 U.S.C. §553.

(d) Attorney's fees, interest, costs of suit as to each Defendant pursuant to 47 U. S. C. § 605 (e).

(e) On the third cause of action, statutory penalties in an amount, in the discretion of this Court, of up to the maximum amount of $150,000.00 as to each Defendant pursuant to §504(c)(1) and §504(c)(2) for their violation of 17 U.S.C. §501(a).

(f) Attorney's fees, interest, costs of suit as to each Defendant pursuant to 17 U. S. C. § 505, together with such other and further relief as this Court may deem just and proper.

Dated:   July 9, 2018
          Ellenville, New York

<strong>PREMIUM SPORTS INC.</strong>

By:  /s/Julie Cohen Lonstein
JULIE COHEN LONSTEIN, ESQ. (JL8521
LONSTEIN LAW OFFICE, P.C.
190 South Main Street, P.O. Box 351
Ellenville, New York   12428
Telephone: (845)647-8500
Facsimile: (845)647-6277
Email: Legal@signallaw.com
*Our File No. PSI18-04NY-01*

-9-